†MANNS v. CINCINNATI ET AL.

**1. FRONTAGE OF CORNER LOT.**

On the facts found by the court, as hereinafter stated, the lot of the plaintiff for the pur-
pose of assessment for a street improvement did not front on Carson avenue for the
whole distance it abuts on said avenue, viz., 417 feet, and should be assessed for the im-
provement of said avenue only on 243½ feet thereof.

**2. SIGNING PETITION NOT AN ESTOPPEL.**

The signing by the plaintiff of a petition for such improvement, did not operate to
estop him from claiming that the assessment made against his lot therefor, was ex-
cessive.

**3. FORMER DECREE ON DIFFERENT GROUNDS OF ACTION NOT A BAR.**

In a suit brought by the plaintiff against the defendant to enjoin the collection
of the whole assessment levied upon his lot for said improvement, on the ground that
it was wholly void for other reasons, a decree was rendered against him. The ques-
tions raised in that case were wholly different from those presented in this case, and
the plaintiff is not barred by that decree from asserting and maintaining his claim in
this.

**4. VOLUNTARY PAYMENTS OF INSTALLMENTS OF ASSESSMENT CANNOT BE RECOVERED.**

Where there have been voluntary payments of excessive installments of such an assess-
ment, the plaintiff is not entitled in an action like this, to a credit on future install-
ments, for the excess so paid—especially is this the case as to such payments made
more than one year prior to the commencement of such an action, in which he practi-
cally seeks to recover the amount claimed to have been improperly paid.

APPEAL from the court of common pleas of Hamilton county.

SMITH, J.

This is an action brought by the plaintiff to enjoin what is alleged to be an
excessive assessment, made upon property owned by him, for the improve-
ment of Carson avenue on Price Hill, on which his lot abuts lengthwise. The
lot abuts on Warsaw avenue on the south 121.75 feet, 121.75 feet on Laclede
avenue on the north and 417 feet on Carson avenue on the west. The lot was
platted to front on Warsaw avenue, which is an improved street, and the resi-
dence of the owner fronts thereon. The carriage drive enters the lot from the
Warsaw avenue and leads to the dwelling, as does the sidewalk. The lot, how-
ever, also fronts on Laclede avenue, which is unimproved. Carson avenue is
now being improved, and the method adopted by the city authorities is to assess
the cost of the improvement thereof upon all the lots and lands bounding and
abutting thereon by the front foot, and the assessment upon the lot of the plain-
tiff for its proportional share of the total cost of the improvement was upon 417
feet, the total length of the lot on Carson avenue, viz: 417 feet. The plaintiff's
lot is surrounded by a fence, with the principal entrances and gates on Warsaw
avenue as has been said; but on Carson avenue, not far distant from Laclede ave-
nue is a gateway, which the evidence shows is occasionally used in this way:
When wagons bring coal to the coal house of plaintiff, which is situated in the
rear of his dwelling, they enter at the main driveway on Warsaw avenue, and go
to the coal house and the coal is unloaded and the empty wagons are driven out
of the gateway on Carson avenue. Of course this gateway could be used for
other purposes, but in the past the use of it has been principally as before stated.
Under the decision of the supreme court in the Haviland case, 50 Ohio St., 471, it
would seem clear, that if this gateway on Carson avenue was not there and used
in the manner stated, that this lot of the plaintiff could not be properly assessed
for each foot that it abuts on Carson avenue, viz: for 417 feet. In that case we

†Judgment reversed by Supreme Court, 54 O. S., 257.

think it should be assessed only for the length that the lot fronts on Warsaw avenue, and on Laclede avenue, viz: 121.75 feet on each, 243½ feet in all—for the lot also fronts on the latter avenue, and in such case it would seem equitable and right to adopt this method.

But we are of the opinion that their mere use of this gateway in a fence of a temporary character, does not have the effect of making this lot, under the decision referred to, front on Carson avenue so that each foot abutting thereon should be assessible for its construction. We are aware that courts have differed in their views as to this, and an early decision by the supreme court fixing the law on this point is most desirable. In the absence of such authoritative ruling we have adopted in this particular case the rule which seems to us calculated to do substantial justice between these parties. We do not doubt that persons may have so improved a corner lot, by the erection of buildings thereon, as to make each side thereof assessable by the front foot abutting on the two streets. But we think it has not been done in this case.

It is urged by the corporation counsel that as the plaintiff signed the petition for this improvement he cannot complain of the amount assessed against him. The plaintiff in this case did no more than sign the petition. This did not estop him from objecting that the mode in which the improvement was made or that the amount of the assessment was not warranted by the statute. 39 Ohio St., 281.

We are further of the opinion that the plea of *res adjudicata* filed by the city is not supported by the evidence. It is true, as pleaded, that the plaintiff and others heretofore, by proceedings in the superior court, sought to wholly enjoin the collection of any assessment on the ground that it was wholly void for the reasons stated in the petition. This was adjudged against the plaintiff and that the assessment made was valid and the petition was dismissed. The question whether the lot of the plaintiff was assessed for too many feet was not before the court or raised by the pleadings, and therefore was not necessarily tried and determined. 10 Ohio St., 45 ; 5 Wall., U. S., 592.

The petition in this case was filed August 4, 1894. It alleged that the assessment was made payable in ten yearly installments, the first being payable in 1892; that on the twenty-ninth of January, 1892, plaintiff paid the installment then payable by the terms of the assessing ordinance ; that on February 9, 1893, he paid the second installment, and on May 28, 1894, the third installment. There is no averment that these installments were paid under protest or on compulsion of any kind. That on August 3, 1894, he tendered payment of the amount he admitted to be due on the other installments, taking credit, however, for the amounts claimed to have been overpaid in the three payments named, but the auditor refused to accept it unless he paid the whole of the future assessments, and thereupon this action was brought, seeking to have the amount of excess paid by him credited on the first installment coming due thereafter, and to have the collection of the amount of the other installments illegally assessed against him enjoined. The question then arises whether he is entitled in law to have the amount of the payments already made by him, over and above what was really due at those times, credited on the next assessment falling due. It is claimed that this should be done on the authority of the case of *Pike* v. *Cummings*, 36 Ohio St., 213. That was a case where the estimated cost of the improvement was over $69,000, and the assessment was made upon this basis. But it turned out that the actual cost was about $18,000 less than was estimated. Pike, the owner of an assessed lot, paid two installments of the assessment, and in an action brought by him to enjoin the collection of the other excessive installments, the court held that the overpayments made on the first two installments should be credited to him on the one next falling due, and enjoined the collection of the excess in the remaining installments.

This case is similar in some respects to that at bar. But there surely could have been no claim on the part of the defendant in the Pike case that the city

was authorized to assess upon the lots and lands abutting upon the improvement a sum greater than the cost thereof. Its action in doing so must have been void as to the excess; and it does not appear, from the statement of the case, that the city was claiming the whole assessment to be valid, as in the case here. We think that the case must be considered in connection with that of *Wilson* v. *Pelton*, 40 Ohio St., 306, subsequently decided. It was there held that in an action against a treasurer to recover taxes paid, which had been illegally assessed, there could not be a recovery where the taxes were paid voluntary, and without protest or objection. It is true that there may be some question whether this, so far as this particular question is concerned, is an action under section 5848, Revised Statutes, which gives to the court the right to enjoin the illegal levy or collection of taxes or assessments, and of actions to recover back such taxes or assessments as have been collected, but we think it is, or that the same rules should be applied in the two cases. And if under this statute, taxes paid cannot be recovered back, if illegally assessed, that in a like action credit should not be given for the excess paid on future installments. In an action under this section, no recovery can be had for taxes or assessments improperly assessed, which have been paid, unless the action be brought within one year after such payment. If this part of the section applies to this case, clearly there could be no recovery as to the first two installments paid by the plaintiff, for the action was not brought within the year after the payment. But we think on the facts stated, the payments made were voluntary. There was no protest or objection made. The city was asserting the right to the whole, and the right so far as these installments were concerned seems to have been conceded by the plaintiff, and the payments should stand.

The decree will be that the collection of so much of the remaining unpaid installments as was under our ruling improperly charged against this lot, be enjoined.

> *Charles F. Droste*, for Plaintiff.
> *Corporation Counsel*, contra.